# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

<table>
<tr>
<td>

**GLOBAL BRAND HOLDINGS, LLC.**
**A New York Limited Liability Company**

*Plaintiff,*
v.

**ACCESSORIES DIRECT**
**INTERNATIONAL USA, INC.,**
a New York Corporation,

*Defendant.*

</td>
<td>

Civil Action No. 17-
CV-7137 (LAK)
(HBP) ECF Case

</td>
</tr>
</table>

## MEMORANDUM OF LAW IN SUPPORT OF GLOBAL BRAND HOLDINGS, LLC'S <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

**GOTTLIEB, RACKMAN & REISMAN, P.C.**
**Attorneys for Plaintiff**
**Marc P. Misthal, Esq.**
**Jonathan Purow, Esq.**
**270 Madison Avenue, 8th floor**
**New York, N.Y. 10016**
**Tel: (212) 684-3900**
**Fax: (212) 684-3999**

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................... iii-v

I. INTRODUCTION .......................................................................................................1

II. STATEMENT OF FACTS...........................................................................................1

A. Global and Its XOXO Brand and Trademarks..................................................1

B. The License Between Global and ADI ..............................................................2

C. ADI's Performance Under the License and Breach ...........................................5

D. Procedural History of the Case  ........................................................................7

III. ARGUMENT ..............................................................................................................9

A. Legal Standard ...................................................................................................9

B. ADI Breached the Contract ..............................................................................10

C. ADI's Affirmative Defenses and Counterclaim Do Not
Preclude The Award of Summary Judgment ...................................................13

1. ADI's First Affirmative Defense  .........................................................13

2. ADI's Second Affirmative Defense ......................................................13

3. ADI's Third Affirmative Defense .........................................................14

4. ADI's Fourth Affirmative Defense .......................................................16

5. ADI's Fifth Affirmative Defense ..........................................................16

6. ADI's Sixth and Seventh Affirmative Defenses ...................................17

D. ADI's Breach of Contract Claim ......................................................................18

CONCLUSION...............................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 252, 247-48, 106 S. Ct. 2505, 2510, 2512 (1986) ..................................... 9-10

*Apex Pool Equipment Corp. v. Lee*,
419 F.2d 556, 562 (2d Cir. 1969).................................................................................14

*Banco Espanol de Credito v. Security Pacific Nat. Bank*,
763 F.Supp. 36, 44 (S.D.N.Y. 1991)............................................................................19

*Boyd v. University of Illinois*,
2001 WL 246402, *10 (S.D.N.Y. 2001).........................................................................18

*Caldarola v. Calabrese*,
298 F. 3d. 156, 160 (2d Cir. 2002)..................................................................................9

*Celotex Corp. v. Catrett*,
477 U.S. 317, 330-31, 106 S. Ct. 2548, 2556 (1986) ......................................................9

*Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.*,
271 A.D.2d 636, 639, 706 N.Y.S.2d 724 (2d Dep't 2000).................................................16

*Emilio v. Sprint Spectrum L.P.*,
2017 WL 946333, at *4 (S.D.N.Y. Feb. 1, 2017).............................................................19

*Fincher v. Depository Trust & Clearing Corp.*,
604 F.3d 712, 720 (2d Cir. 2010).............................................................................. 9-10

*Franconia Assocs. v. United States*,
536 U.S. 129, 143, 122 S. Ct. 1993, 2002 (2002)...........................................................13

*Fujitsu Ltd. v. Federal Express Corp.*,
247 F.3d 423, 428 (2d Cir. 2002)...................................................................................9

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.*,
82 F.Supp.2d 126, 130 (S.D.N.Y. 1999).......................................................................16

*Harsco Corp. v. Segui*,
91 F.3d 337, 348 (2d Cir. 1996) .................................................................................10

*Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*,
259 A.D.2d 932, 686 N.Y.S.2d 911, 913 (3d Dep't 1999) ...............................................14

*Int'l Fid. Ins. Co. v. Aulson Co.,*
No. 11 Civ. 9240 (DLC), 2012 WL 6021130, at *7 (S.D.N.Y.) Dec. 4, 2012 ..................16

*Int'l Gateway Exch., LLC v. W. Union Fin. Servs.,*
333 F. Supp. 2d 131, 149 (S.D.N.Y. 2004) .......................................................20

*JMD Holding Corp. v. Congress Financial Corp.,*
4 N.Y. 3d 373, 379-380, 795 N.Y.S.2d 502, 506 (2005)  ..................................17

*JSC Foreign economic Association Technostroyexport v.*
*International Development and Trade Services, Inc.,*
386 F.Supp.2d 461, 477 (S.D.N.Y. 2005)...........................................................16

*Leasing Service Corp. v. Justice,*
673 F.2d 70, 73 (2d Cir. 1982)............................................................................17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) ..........................................9

*New Paradigm Software Corp. v. New Era of Networks, Inc.,*
2002 WL 31749396, at *17 (S.D.N.Y. Dec. 9, 2002) .........................................20

*Niagara Mohawk Power Corp. v. Jones Chem., Inc,*
315 F.3d 171, 175 (2d Cir. 2003).........................................................................9

*Nomura Securities Intern., Inc. v. E*Trade Securities, Inc.,*
280 F.Supp.2d 184, 196 (S.D.N.Y. 2003).............................................................16

*Norcon Power Partners v. Niagara Mohawk Power Corp.,*
92 N.Y.2d 458, 682 N.Y.S.2d 664, 667, 705 N.E.2d 656 (1998) ........................13

*Pay Tel Sys. V. Seiscor Techs., Inc.,*
850 F. Supp. 276, 279 (S.D.N.Y. 1994)...............................................................20

*Queens Ballpark Company, LLC v. VYSK Communications,*
226 F. Supp.3d 254, 259 (S.D.N.Y. 2016)...........................................................12

*Rachmani Corp. v. 9 East 96th Street Apartment Corp.,*
211 A.D.2d 262, 629 N.Y.S.2d 382, 384 (1st Dep't 1995)  ................................14

*Scott. v. Harris,*
550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007)................................................10

*Shechter v. Comptroller of N.Y.,*
79 F.3d 265, 270 (2d Cir. 1996) ..........................................................................13

iv

*United Air Lines, Inc. v. Austin Travel Corp.*,
867 F.2d 737, 740 (2d Cir. 1989)......................................................................................17

*Washington v. Kellwood Co.*,
No 05 Civ. 10034 (DAB), 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009) ..................18

*The Edward Andrews Grp., Inc. v. Addressing Servs. Co.*,
No. 04 Civ. 6731 (LTS), 2005 WL 3215190, at *5 (S.D.N.Y. Nov. 30, 2005).............12, 17

## RULES

Fed. R. Civ. P. 26 (a)(1)...........................................................................................20

Fed. R. Civ. P. 36 (a)(3)............................................................................................8

Fed. R. Civ. P. 37 (c)(1)...........................................................................................20

Fed. R. Civ. P. 56 (a) ...........................................................................................9, 20

N.Y. Gen. Oblig. §5-501(1)........................................................................................12

John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 12-3 (3d ed. 1987)..........13

This Memorandum of Law is submitted on behalf of Plaintiff Global Brand Holdings, LLC ("Plaintiff" or "Global"), through its attorneys Gottlieb, Rackman & Reisman, P.C., pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking partial summary judgment on: 1) its claim for breach of contract under New York common law against defendant Accessories Direct International, Inc. ("Defendant" or "ADI"); 2) ADI's alleged defenses to its breach of contract; and 3) ADI's purported counterclaim for breach of contract.  Submitted herewith in support of this motion are the Declaration of Steven Nakash, the Declaration of Marc P. Misthal, and Plaintiff's Rule 56.1 Statement.

## I.  INTRODUCTION

This is a straightforward case of breach of contract.  The parties executed a license agreement on May 1, 2014 (the "License"), which provided ADI with an exclusive license to use Global's XOXO trademark on handbags and related accessories.  ADI breached the contract by, *inter alia*, failing to provide periodic accounting reports and pay minimum guaranteed amounts. Global was damaged by this breach, in that it did not receive the agreed-upon payments.  As a result, Global terminated the License pursuant to its terms. Global, having engaged unsuccessfully in pre-litigation efforts to resolve this matter, now seeks that which the terms of the License permit it to recover:   1) accelerated payment of all outstanding payments due under the License; 2) interest; and 3) attorneys' fees.[1]

## II.  STATEMENT OF FACTS

### A.  Global and Its XOXO Brand and Trademarks

For over 25 years, Global and its predecessors have been the exclusive owner of the

---

[1] In the event that the Court grants this motion, Global will submit an accounting of its attorneys' fees and invoices.

brand and trademark XOXO for a broad array of goods, namely clothing, perfumes and accessories. Statement of Material Facts ("Statement") at ¶ 2.  Global owns sixteen federal trademark registrations that include or prominently feature the XOXO trademark, including a registration that covers products such as luggage, handbags and purses. *Id*. at ¶¶ 3, 4.  XOXO branded products are sold by retailers such as Macy's and Amazon.com, have appeared in publications such as the Los Angeles Times, the New York Post, the Wall Street Journal, and Women's Wear Daily, and in advertisements featuring iconic supermodels such as Tyra Banks, Miranda Kerr and Chrissy Teigen. *Id*. at ¶ 5.  XOXO-branded goods are produced by Global's licensees subject to the exacting standards and careful supervision of Global pursuant to comprehensive licensing agreements.   *Id*. at ¶ 8.

B.  <u>The License Between Global and ADI</u>

In late 2013 and early 2014, Global and ADI entered into negotiations for Global to grant a license to ADI to use the XOXO trademark on handbags and related accessories. *Id*. at ¶ 10. On January 15, 2014, during the course of those negotiations, Alberto Rosenthal, one of ADI's owners, sent an email to Global in which ADI proposed its "realistic projections in sales we feel comfortable working with for the 5 year term we discussed" (the "5-Year Sales Projections"). *Id*. at ¶ 11.  In this email, Mr. Rosenthal also said, *inter alia*: "we feel it will take us at least 2-3 seasons before we can actually generate some business with the brand in the USA." *Id*. at ¶ 12. Thus, even before the license was signed, ADI expected that it would take multiple seasons to build sales of the licensed products.   In the same e-mail Mr. Rosenthal stated:

> We believe based on what we have seen on the apparel that there is
> a big potential business we can generate on the handbag line
> especially with our input in the design, product and our
> relationships which is why are [sic] willing to invest on the

2

> development of these collections even if it means that we have to
> wait 2 seasons before we actually generate any sales on the brand.
> *Id*. at ¶ 13.

ADI was willing to invest in the development of the licensed products because it was confident that its knowledge of the industry, quality of its products, and industry relationships would bring it a return on its investment.

Global and ADI entered into the License on May 1, 2014. *Id*. at ¶ 15.  The License granted ADI the exclusive right to sell and distribute XOXO-branded handbags, wallets and other accessories in the U.S. *Id*. at ¶ 17.  As consideration for this right, ADI agreed to pay a percentage of its net sales to Global. *Id*. at ¶ 18.  To ensure that Global would earn a set amount of income from the License, and as insurance in case ADI's sales did not experience optimal growth, the License set minimum net sales targets, and extrapolated from these amounts a series of graduated guaranteed minimum payments (the "GMR"). *Id*. at ¶ 19.  ADI agreed to pay GMR "[f]or each Contract Year throughout the Licensed Term…as set forth in Exhibit B-3." *Id*. at ¶ 20. As it was anticipated that it would take time to grow the value of the license, the GMR for the first year of the License started modestly at ▮▮▮▮, and increased to $▮▮▮▮ for the second year of the License. *Id*. at ¶ 21.  ADI further agreed to submit detailed financial reports and statements to Global at the close of each quarter, setting forth ADI's net sales figures and calculating the amounts due to Global (the "Financial Reports") so that Global could ensure that it was receiving what was due to it under the License. *Id*. at ¶ 22.

Due to the importance of Global's licensees efforts to market and promote the XOXO trademark and licensed products, the License required ADI to constantly use its best efforts to maximize the granted license by advertising and promoting the XOXO branded products. *Id*. at ¶ 23.  Furthermore, under Section 7.1 of the License, ADI pledged its direct and active support to

any marketing programs developed by Global, including through the provision of sample licensed products, and other marketing materials such as photographs of the goods. *Id.* at ¶ 24. To financially support these marketing programs, which were intended for the good of all licensees, ADI agreed to pay Global advances toward XOXO-brand marketing ("AMP") ADI agreed to pay an AMP "[f]or each Contract Year throughout the Licensed Term…as set forth in Exhibit B-4." *Id.* at ¶ 25.  The AMP for the first year of the License was $█████, and for the second year was $███████. *Id.* at ¶ 26.

The License that ADI agreed to did not require Global to do much more than grant the license itself.  Global made no representations or warranties in the License regarding the strength or value of the XOXO brand with respect to handbags, and the License specifically included a provision stating: "LICENSEE acknowledges that LICENSOR has made no warranties or representations except those expressly stated herein, if any." *Id.* at ¶ 27.

Additionally, the License detailed the procedures for termination of the License in the event of a breach by ADI. *Id.* at ¶ 28.  Any failure to make GMR or AMP payments, or provide the Financial Reports in a timely fashion, would constitute a material breach. *Id.* at ¶ 29.  In the event of a breach by ADI, Global had to provide ADI notice and ADI had an opportunity to cure the breach. *Id.* at ¶ 30.  Ultimately, however, Global had the right to terminate the License if ADI did not meet its financial and reporting obligations. *Id.* at ¶ 31.

In the event of a termination, Global was entitled to certain remedies. *Id.* at ¶ 32.  Besides simply owing overdue amounts, ADI agreed that under License Section 10.2 (b) Global was entitled to the accelerated and immediate payment of all remaining GMR and AMP payments from the date of the breach through the scheduled expiration date of the License. *Id.* at ¶ 33.  In

addition, ADI agreed to pay Global interest per Section 4.5 (b):

> If LICENSEE fails to make any payment on the date such payment is due hereunder, then, without prejudice to any other rights or remedies that LICENSOR may have against LICENSEE, LICENSEE shall pay interest on the deficiency of the amount due at the rate equal to five (5) percentage points above the prime rate per annum being charged by the JP Morgan Chase Bank in New York, New York, as of the close of business on the date such payment becomes due (but not more than the maximum rate of interest which legally can be paid by any such entity). Such interest shall accrue as of the day such deficiency in payment arose until the date such amount is paid in full. *Id*. at ¶ 34.

### C. ADI's Performance Under the License and Breach

After the License commenced, Global proceeded in good faith to assist ADI to maximize the License, as that would mean greater profits for both ADI and Global. *Id*. at ¶ 35.  For example, in December 2015, Global was presented with an opportunity to sell XOXO-branded backpacks to Burlington Coat Factory. *Id*. at ¶ 36.  Global alerted ADI of Burlington Coat Factory's interest, and the next day Global executed an amendment specifically granting ADI the right to create XOXO-branded backpacks for children. *Id*. at ¶¶ 37, 38.  On another occasion, ADI required an authorization letter from Global confirming that ADI was an authorized sub-licensee for the licensed products in Mexico; Global drafted the authorization letter and sent it to ADI within two hours. *Id*. at ¶¶ 40, 41.

By June 2014 various issues started to arise with ADI's performance.  As discussed above, licensees sell XOXO-branded products in a number of product categories and in a number of countries. *Id*. at ¶ 43.  Global coordinates the look and feel of each season's line of products, and its licensees coordinate to create products that are visually consistent with this motif. *Id*. at ¶ 44.  Cooperation amongst the XOXO licensees is paramount to optimize all opportunities to market the XOXO-brand in fashion periodicals (e.g. where fashion magazine employees contact

5

fashion brands to include their products in a photo shoot), social media (where fashion bloggers spread news of trendy products) and advertisements. *Id*. at ¶ 45.  Yet ADI repeatedly undermined these marketing efforts during the License by: 1) not responding to urgent inquiries from other licensees seeking handbags to use in promotional efforts; 2) not having sufficient sample licensed products, or photographs thereof, to distribute for promotional opportunities; and 3) failing to promptly respond to requests for images or products. *Id*. at ¶ 46.  As a result, other XOXO licensees complained to Global that ADI's failures compromised their marketing efforts, including one instance in which Kellwood, Global's main apparel licensee, complained that ADI had sabotaged Kellwood's relationship with the accessories editor at Cosmopolitan magazine. *Id*. at ¶ 47.

While Global and ADI had modest expectations for sales at the beginning of the License, and structured the minimum net sales expectations and GMR payment amounts accordingly, ADI immediately had substantial sales of the licensed products. *Id*. at ¶ 48.  In the first calendar quarter of the License, ADI's net sales exceeded the minimum net sales target *for the entire first year of the License*. *Id*. at ¶ 49.  By the end of the first year of the License, ADI's net sales totaled over $⬛⬛⬛⬛, which vastly exceeded the parties' expectations, considering it was even greater than the minimum net sales target *for the third year of the License*. *Id*. at ¶ 50.

Yet despite the immediate sales success, ADI's failures under the License soon extended to its financial and reporting obligations. *Id*. at ¶ 51.  As a result, Global, in accordance with the terms of the License, provided ADI with notice of each breach. *Id*. at ¶ 52.  On August 9, 2016, Global sent ADI a letter which stated that ADI had not submitted its required reports for "Q1 and Q2 of 2016", despite the fact that these reports were due on April 15, 2016 and July 15, 2016. *Id*.

at ¶ 53. ADI provided the report on August 17, 2016, well after it was due. *Id*. at ¶ 54. Two months later, on October 14, 2016, Global sent ADI a letter which stated that ADI's GMR and AMP payments for the 3rd and 4th quarter were past due; those payments were due on July 1, 2016 and October 1, 2016. *Id*. at ¶ 55. ADI never paid these amounts. *Id*. at ¶ 56. On November 21, 2016, Global sent a letter advising ADI that it was in breach of contract due to its failure to submit its required Financial Report for the 3rd quarter of 2016, which was due on October 15, 2016. *Id*. at ¶ 57. ADI never provided this report to Global. *Id*. at ¶ 58. Finally, Global sent ADI a letter on December 5, 2016, which stated that ADI was in breach of contract due to failure to submit its GMR payment for the 3rd quarter of 2016, which was due on July 1, 2016. *Id*. at ¶ 59. ADI never made this payment to Global. *Id*. at ¶ 60. Indeed, none of these letters prompted ADI to become current in its payment and reporting obligations. *Id*. at ¶ 61.

As a result of ADI's repeated deficiencies and its failure to correct them, Global, by March 6, 2017 letter, terminated the License, thereby triggering the accelerated payment of all GMR and AMP payments. *Id*. at ¶ 63. Global incurred significant damage due to ADI's breach, as it did not receive the compensation due to it under the License, and did not have handbags available for marketing purposes or purchase for a period of time. *Id*. at ¶ 62. As the strength of its brand lies in continuously offering a comprehensive range of products bearing the XOXO trademark, if this continuity or comprehensiveness is interrupted it diminishes the overall brand. *Id*. at ¶ 62.

D. Procedural History of the Case

After attempts to settle this dispute proved unsuccessful, Global filed its Complaint in the instant action on September 19, 2017; as relevant herein, the Complaint includes a claim for

breach of contract. *Id.* at ¶ 64.  ADI filed its Answer and Counterclaim on December 4, 2017. *Id.*
at ¶ 65.  In its Answer, ADI admitted that it had received all of Global's letters regarding ADI's
failures to meet its payment and reporting obligations. *Id.* at ¶ 66.  ADI also admitted that it did
not make certain required payments under the License or provide certain Financial Reports. *Id.* at
65.

On March 19, 2018 ADI served its Initial Disclosures on Global. *Id.* at ¶ 67.  The Initial
Disclosures did not provide a computation of damages, and instead stated: "No such computation
is available at this time due to the status of discovery and expert retention." *Id.* at ¶ 68.

Global served its first set of document requests on ADI on April 10, 2018. *Id.* at ¶ 69.
ADI served its responses on June 6, 2018, and at the same time made its first and only document
production.  ADI's 130 pages of produced documents consisted of the 57 page license, and 73
pages of correspondence between Global, ADI and Global's licensees, all dated after the
execution of the License. *Id.* at ¶¶ 70, 71.

Global served Requests for Admission, its First Set of Interrogatories and its Second
Request for Production of Documents on ADI on August 23, 2018. *Id.* at ¶ 72.  The Second
Request for Production consisted of a sole request for all documents upon which ADI intended to
rely upon at trial. *Id.* at ¶ 73.  ADI did not produce any documents in response to that request. *Id.*
at ¶ 74.  Likewise, ADI never responded to Global's Requests for Admission or First Set of
Interrogatories. *Id.* at ¶ 75.  As a result, ADI is deemed to have admitted Global's requests for
admission.  Fed. R. Civ. P. 36 (a)(3).

Per the operative scheduling order, all non-expert factual discovery closed on September
25, 2018, and expert discovery closed on December 11, 2018. *Id.* at ¶ 76. To date, ADI has never
provided a computation of its alleged damages or produced any evidence or correspondence

from prior to the execution of the License.  *Id.* at ¶ 77, 84.  ADI has not supplemented its Initial

Disclosures, or identified any expert witnesses, much less an expert who would testify to the

amount and calculation of its alleged damages. *Id*. at ¶ 77.

### III. ARGUMENT

#### A.  Legal Standard.

Summary judgment should be granted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  It is the moving party's initial burden to make a prima facie showing that no

disputes of material fact exist for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330-31, 106

S. Ct. 2548, 2556 (1986).  Once this showing is made, to defeat summary judgment, the non-

movant "'must do more than simply show that there is some metaphysical doubt as to the

material facts . . . . The nonmoving party must come forward with specific facts showing that

there is a *genuine issue for trial*.'"  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002)

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct.

1348, 1356 (1986)).  The non-movant "may not rely on conclusory allegations or unsubstantiated

speculation[;]" it must produce evidence to support its claims.  *Fujitsu Ltd. v. Federal Express

Corp.*, 247 F.3d 423, 428 (2d Cir. 2002) (citations and quotations omitted).  "The 'mere

existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to

defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171,

175 (2d Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505,

2512 (1986)).

In determining whether genuine issues of material fact exist, a court must view the facts

in the light most favorable to the non-moving party.  *See Fincher v. Depository Trust & Clearing*

*Corp.*, 604 F.3d 712, 720 (2d Cir. 2010).  But "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, at 248 (1986).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007) (quoting *Anderson*, 477 U.S. at 247-48).

B.  <u>ADI Breached the Contract</u>

There is no real factual dispute that ADI breached the license agreement.

To establish a breach of contract claim under New York law, a plaintiff must prove: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

It is undisputed that the License was a valid and enforceable contract between Global and ADI.  The License, which was executed on behalf of ADI by its principal, Alberto Rosenthal, specifically stated in Section 9.1 (a) that "[t]his Agreement has been duly and validly executed by LICENSEE [ADI] and constitutes a valid and binding agreement of LICENSEE, enforceable against LICENSEE in accordance with its terms."  See also Answer, ¶ 3, admitting ADI negotiated and executed the License.

Additionally, there is no dispute that Global fulfilled its obligations under the License. Global permitted ADI to utilize the XOXO trademark on handbags and related accessories, and ADI has not asserted or alleged that Global did not fulfill any of its contractual obligations.

Indeed, as noted above, Global went above and beyond its obligations under the License. In December 2015 a promising business opportunity arose, and Global promptly advised ADI of

this opportunity.  When ADI confirmed its interest, Global swiftly executed an amendment to the

License so that ADI could take advantage of the opportunity.  On another occasion, Global

promptly executed an authorization letter so that ADI could sell the licensed products into

Mexico.

On the other hand, ADI breached multiple terms of the License.  As discussed above,

ADI did not make required GMR or AMP payments, and ADI does not dispute this.  Answer ¶¶

35-37.  Likewise, in 2016 and 2017 ADI did not provide Global with written reports setting forth

its Net Sales (as that term is defined in the License), as required by Paragraph 4.6 (a).  Again,

ADI admits that it did not provide Global with the required reports.  Answer ¶¶ 34, 37.  The

License required ADI to pay GMR "[f]or each Contract Year throughout the Licensed Term…as

set forth in Exhibit B-3."  4.2(a).  Additionally, the License obligated ADI to pay an AMP "[f]or

each Contract Year throughout the Licensed Term…as set forth in Exhibit B-4."  4.4(a).  As ADI

concedes, it did not make the GMR or AMP payments required in 2016 and 2017.

Global, in four different letters, provided notice to ADI of its failures to meet these

essential obligations under the License and gave ADI the opportunity to cure these breaches.

ADI failed to pay delinquent GMR and AMP payments from September 2016 forward, even

though ADI acknowledges that it received each of the four letters Global sent.  Answer ¶¶ 39-42.

Ultimately, Global terminated the License via a letter dated March 6, 2017.  In terminating the

License, Global demanded what the parties agreed to in the License:  that ADI pay, on an

accelerated basis, the remaining sum due under the License, $███████.  ADI admits that it

received the termination letter.  Answer ¶ 43.  Nevertheless, ADI did not respond to the

termination letter and did not pay the monies owed under the License.

Due to ADI's failure to meet its obligations under the License, Global sustained damage.

First, Global lost the income it was entitled to under the License.  Further, Global's XOXO brand is strengthened by continuously offering a comprehensive range of XOXO brand products.  If for any reason this continuity or comprehensiveness is interrupted, it diminishes the overall XOXO brand.

Global is therefore entitled to the remedies that the parties agreed upon in the License, namely the accelerated GMR and AMP payments demanded in Global's termination letter. Courts in this jurisdiction have upheld accelerated payment provisions on many occasions.  *See Queens Ballpark Company, LLC v. VYSK Communications*, 226 F.Supp.3d 254, 259 (S.D.N.Y. 2016) (accelerated damages were enforced as acceptable liquidated damages when defendant defaulted on payment obligations under an advertising agreement) *citing The Edward Andrews Grp., Inc. v. Addressing Servs. Co.*, No. 04 Civ. 6731 (LTS), 2005 WL 3215190, at *5 (S.D.N.Y. Nov. 30, 2005) (accelerated damages to be paid in one lump sum were enforced when defendant breached on a consulting contract).

In addition, in the License ADI agreed to pay Global interest on any unpaid sums at a rate equal to five percent above the prime rate per annum being charged by the JP Morgan Chase Bank in New York, New York (or if this is too high according to the law, the highest possible interest permitted under the law).  Statement at ¶ 35.  On the date of the termination, March 6, 2017, this interest rate was 3.75%, and this is below the maximum permissible legal rate of interest under New York law, 16%.  N.Y. Gen. Oblig. §5-501(1).  *Id.* at ¶ 79, 81.  Therefore, the total amount due to Global is $█████, representing the $█████ demanded in the termination letter and interest accrued at 8.75% from that date through December 12, 2018.  *Id.* at ¶ 83.

C. ADI's Affirmative Defenses and Counterclaim Do Not Preclude The Award of Summary

Judgment

As detailed below, ADI's Affirmative Defenses and Counterclaim are either precluded as

a matter of law, inapplicable to the breach of contract claim or insufficiently pled and,

accordingly, do not bar partial summary judgment.  ADI has not pled any general or affirmative

defenses which, if proven, could defeat Global's entitled to summary judgment on its breach of

contract claims.  *See, e.g. Shechter v. Comptroller of N.Y.*, 79 F.3d 265, 270 (2d Cir. 1996)

("Affirmative defenses which amount to nothing more than mere conclusions of law and are not

warranted by any asserted facts have no efficacy.")

1. ADI's First Affirmative Defense

ADI's First Affirmative Defense is inapplicable to Global's breach of contract claim.

ADI's First Affirmative Defense is directed towards Global's claim for breach of the duty and

good faith and fair dealing, which is not the subject of this motion for partial summary judgment.

Accordingly, this affirmative defense need not be considered.

2. ADI's Second Affirmative Defense

ADI's Second Affirmative Defense does not raise any factual dispute, but is instead

based on a misunderstanding of the doctrine of anticipatory breach.

Anticipatory repudiation occurs when, before the time for performance has arisen, a party

to a contract declares his intention not to fulfill a contractual duty. *See*, *e.g.*, *Franconia Assocs. v.*

*United States*, 536 U.S. 129, 143, 122 S. Ct. 1993, 2002 (2002); *Norcon Power Partners v.*

*Niagara Mohawk Power Corp.*, 92 N.Y.2d 458, 682 N.Y.S.2d 664, 667, 705 N.E.2d 656

(1998); John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 12-3 (3d ed. 1987).

When confronted with an anticipatory repudiation, the non-repudiating party has two mutually

exclusive options. He may (a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) he may continue to treat the contract as valid and await the designated time for performance before bringing suit. *Inter-Power of New York, Inc. v. Niagara Mohawk Power Corp.*, 259 A.D.2d 932, 686 N.Y.S.2d 911, 913 (3d Dep't 1999); *Rachmani Corp. v. 9 East 96th Street Apartment Corp.*, 211 A.D.2d 262, 629 N.Y.S.2d 382, 384 (1st Dep't 1995); *see also Apex Pool Equipment Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969).

ADI asserts that Global's claims are barred by the doctrine of anticipatory breach, since ADI acknowledged its intent not to perform its obligations under the License in an email dated May 7, 2016, in which one of its principals stated, "I need to sit with you to discuss about the possibility of giving up the brand".   Statement at ¶ 50.   Thus, ADI positions itself as the repudiating party.   However, as discussed above, the doctrine provides that at the moment ADI announced its intention to not meet its obligations, *Global* was the party that could choose to either treat ADI's pronouncement as an anticipatory breach, or wait until the time of performance.   Global chose the latter, and awaited the time at which ADI was supposed to provide its Financial Reports and make its GMR and AMP payments.   When ADI failed to meet its obligations, Global complied with the terms of the License and provided proper notice. Only after ADI repeatedly failed to make timely payments, and the parties could not settle the dispute did Global file suit.   Thus, since this defense does not raise any factual disputes, it does not preclude summary judgment.

3.   <u>ADI's Third Affirmative Defense</u>

ADI's Third Affirmative Defense states that Global's claims are barred because it suffered no cognizable harm due to the licensing value of the XOXO trademark being worthless

with respect to handbags.

First, Global did suffer cognizable harm.  As a result of ADI's breach, Global was deprived of the GMR and AMP payments that ADI agreed to make from the third quarter of 2016 forward.  Global incurred significant damage due to ADI's breach, as it did not have handbags and other licensed products available for a period of time for marketing purposes or purchase, and the strength of its brand lies in continuously offering a comprehensive range of products bearing the XOXO trademark.

As shown by the royalty reports ADI did provide to Global, and despite ADI's pre-License expectation that it would not generate any sales for the first 2-3 seasons of the License, ADI immediately achieved significant sales of the licensed XOXO products.  As a result, ADI's royalty payments were significantly higher than the GMR for 2015.  If that trend had continued, then under the License Global would have received far more in royalties than just the minimums. Moreover, had the License truly been worthless, ADI would not have been able to achieve such sales within the first quarter of the License term.  Notwithstanding its claim, ADI has not produced a single piece of evidence to substantiate the assertion that the License was worthless. Moreover, ADI has not identified any witness, much less an expert, who can address the value of the license.

Even if ADI could somehow prove that the License was worthless, that would not negate the fact that Global was deprived of funds that ADI agreed to pay to Global under the License. The GMR and AMP payments that Global and ADI ultimately agreed to were percentages of the minimum gross sales projections that *were proposed by ADI*.   ADI specifically stated in an email prior to the execution of the License that it expected minimal sales near the start of the License term, and it provided minimum sales projections to reflect this fact.  Global accepted

15

these projections and so they were incorporated into the License.  Accordingly, this defense does not present any factual dispute that would preclude the entry of summary judgment in favor of Global.

   4.   ADI's Fourth Affirmative Defense

   Likewise, ADI's Fourth Affirmative Defense does not preclude summary judgment.  In this defense, ADI asserts that Plaintiff's claims are barred by the doctrine of unclean hands.  It is hornbook law that the doctrine of unclean hands is an equitable defense that does not apply to actions that seek money damages. *See JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.*, 386 F.Supp.2d 461, 477 (S.D.N.Y. 2005); *see also Nomura Securities Intern., Inc. v. E*Trade Securities, Inc.*, 280 F.Supp.2d 184, 196 (S.D.N.Y. 2003).  As Global is seeking damages as a remedy for its breach of contract claim, the equitable defense of unclean hands is inapplicable.

   Further, the "defendant who invokes the doctrine of unclean hands has the burden of proof." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F.Supp.2d 126, 130 (S.D.N.Y. 1999).  ADI has not come forward with any facts supporting a defense of unclean hands.

   5.   ADI's Fifth Affirmative Defense

   This affirmative defense attempts to impose on Global a duty to mitigate that does not exist, and therefore does not present a factual dispute that precludes summary judgment.

   In a contract that includes an enforceable liquidated damages provision or acceleration clause, the non-breaching party has no duty to mitigate damages resulting from the breach.  *Id.* at 259 *citing Int'l Fid. Ins. Co. v. Aulson Co.*, No. 11 Civ. 9240 (DLC), 2012 WL 6021130, at *7 (S.D.N.Y. Dec. 4, 2012); *Delvecchio v. Bayside Chrysler Plymouth Jeep Eagle, Inc.*, 271 A.D.2d 636, 639, 706 N.Y.S.2d 724 (2d Dep't 2000) ("Mitigation of damages is not relevant when there

is a valid liquidated damages clause."); see also *The Edward Andrews Grp., Inc. v. Addressing Servs. Co.*, No. 04 Civ. 6731 (LTS), 2005 WL 3215190, at *5 (S.D.N.Y. 2005) ("An acceleration clause is one type of liquidated damages provision, which ... requires a party who defaults on installment payments to pay the balance of the debt in one lump sum. Parties frequently agree to acceleration clauses, and New York courts typically enforce such provisions according to their terms").  Notwithstanding the foregoing, ADI posits that Global had a duty to mitigate its damages.  This is not the case, as a matter of law.

Global addresses the issue of whether the liquidated damages provision is enforceable below.

6.   ADI's Sixth and Seventh Affirmative Defenses

It is undisputed that Global and ADI agreed upon the amount of the GMR and AMP payments.  Despite that agreement, ADI seeks to escape liability by asserting, in its Sixth and Seventh affirmative defenses, that any accelerated GMR and AMP payments are barred because they do not bear a meaningful relationship to any actual losses suffered by Plaintiff, and as such are unenforceable penalty clauses.  This defense presents a question of law which the Court can determine.  *See JMD Holding Corp. v. Congress Financial Corp.*, 4 N.Y.3d 373, 379-380, 795 N.Y.S.2d 502, 506 (2005).

In New York, "[a] liquidated damages clause generally will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed." *United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 740 (2d Cir. 1989).  Liquidated damages are not penalties if they bear a "reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation."  *Leasing Service Corp. v. Justice*, 673 F.2d 70, 73 (2d Cir. 1982).

17

Here, the accelerated GMP and AMR payments represent the minimum amount that Global would have received under the License in the event that ADI continued to perform (those payments could have been higher, depending on ADI's sales).    This is not an unreasonable amount, as evidenced by the fact that ADI and Global agreed to it.  In fact, the payment amounts equal the royalty percentage multiplied by the Minimum Net Sales, and ADI *is the party that proposed the Minimum Net Sales figures in the License*.

Further, it is a reasonable amount since, as set forth in the License, the actual payment may have been higher, depending on ADI's sales, had ADI performed; Global cannot determine with any certainty ADI's sales or the GMR and AMP payments due on those sales had ADI continued to perform.  In view of the foregoing, the GMR and AMP payments due are a reasonable and proportionate estimate of Global's damages resulting from ADI's breach of the License, and the Sixth and Seventh Affirmative Defenses do not preclude Global's motion for partial summary judgment.

D.      ADI's Breach of Contract Claim

In yet another effort to escape its obligation to make the GMR and AMP payments due under the License, ADI alleges that Global, by virtue of the same actions, breached both the implied duty of good faith and fair dealing and the License itself.

"'The elements of a claim for breach of the duty of good faith and fair dealing are practically identical to the elements of a negligence claim:' (1) defendant must owe plaintiff a duty to act in good faith and conduct fair dealing; (2) defendant must breach that duty; and (3) the breach of duty must proximately cause plaintiff's damages." *Washington v. Kellwood Co*., No 05 Civ. 10034 (DAB), 2009 WL 855652, at *6  (S.D.N.Y. Mar. 24, 2009) (quoting *Boyd v. University of Illinois*, 2001 WL 246402, at *10 (S.D.N.Y. 2001)).

18

ADI's Counterclaim fails because it has never established any actions by Global that constituted a breach, thereby fulfilling the second element of the standard for the breach of the implied covenant of good faith and fair dealing and the standard for a breach of contract.  Global made no representations regarding the value of the brand in the License.  Therefore, the court should not read into the License representations that do not exist.  An implied covenant of good faith and fair dealing, however, does not provide a Court carte blanche to rewrite the parties' agreement, meaning that a court cannot imply a covenant that is inconsistent with the terms expressly set forth in the contract. *Banco Espanol de Credito v. Security Pacific Nat. Bank*, 763 F.Supp. 36, 44 (S.D.N.Y. 1991); ADI has not pled with any specificity what Global did to breach the License or implied covenant.  Global's only obligation under the License was to license the XOXO trademark to ADI for use with respect to handbags and related accessories.  It met this obligation, and during the course of the License exceeded these obligations in instances where it amended the License to expand the licensed products to include children's backpacks (in response to an inquiry from a retailer) and issue authorization letters to parties that needed proof of ADI's license.

Even if ADI could establish that Global breached its obligations under the License or the implied covenant of good faith and fair dealing, it would still fail because it has not established that Global's actions caused it damage, another common element of the two standards.  ADI has not provided any evidence to substantiate its alleged damages of $600,000.  After stating in its Initial Disclosures that it could not determine the extent of its damages because it had not taken discovery, ADI never supplemented its Initial Disclosures and never took any discovery—it never served document requests, requests for admission or interrogatories, and never took a deposition. *See Emilio v. Sprint Spectrum L.P.*, 2017 WL 946333, at *4 (S.D.N.Y. Feb. 1, 2017)

19

*citing* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("a party seeking damages must provide to the other parties 'a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based.'").  Moreover, when asked to produce all documents it intended to rely upon at trial, ADI did not even bother to respond. Surely ADI would have been able to document such a loss, and, if it had those documents, would have produced them.  Similarly, ADI has not identified any expert or non-expert who could testify as to the amount of its alleged damages.  Thus, under Rule 37 (c)(1), as well as the fact that discovery has been closed since December 11, 2018, ADI is prohibited from presenting at any time prior to and setting forth at trial any information purporting to establish its alleged damages.  "Courts grant summary judgment dismissing a breach of contract claim where plaintiff has put forth no evidence of damages that are recoverable under New York law." *Int'l Gateway Exch., LLC v. W. Union Fin. Servs.*, 333 F. Supp. 2d 131, 149 (S.D.N.Y. 2004); *see, e.g., New Paradigm Software Corp. v. New Era of Networks, Inc.*, 2002 WL 31749396, at *17 (S.D.N.Y. Dec. 9, 2002); *Pay Tel Sys. v. Seiscor Techs., Inc.*, 850 F. Supp. 276, 279 (S.D.N.Y. 1994).

## <u>CONCLUSION</u>

For all of the foregoing reasons, it is respectfully requested that Global's motion, pursuant to Fed. R. Civ. P. 56 (a), for partial summary judgment on its Fourth Claim of Relief for Breach of Contract in Violation of the Common Law of New York, against ADI's affirmative defenses, and against ADI's Counterclaim for Breach of Contract, be granted in its entirety, together with an award of (1) the accelerated payment of all outstanding GMR and AMP payments due under the License, per License Section 10.2 (b),  2) interest, per License Section 4.5 (b), 3) attorneys' fees to Global as the prevailing party, per License Section 11.5, and such

other relief as is just and proper.

Dated: December 22, 2018                    Respectfully submitted,

                                            /s/ Jonathan M. Purow
                                            Marc P. Misthal  (MM6636)
                                            Jonathan M. Purow (JP0052)
                                            GOTTLIEB, RACKMAN & REISMAN, P.C.
                                            270 Madison Avenue, 8th Floor
                                            New York, NY 10016
                                            (212) 684-3900
                                            mmisthal@grr.com
                                            jpurow@grr.com